# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KWAME ASARE and HAYDEE CAMPOS, on behalf of themselves and on behalf of all other similarly-situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> THE CHANGE GROUP NEW YORK, INC., <br><br> Defendant. | Index No. 12 CV 3371 (CM) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement, including all exhibits hereto (collectively, the "Agreement"), is made and entered into by and between, on the one hand, Named Plaintiffs (as defined below), and the Class of individuals they seek to represent (as hereinafter defined), and on the other hand, The Change Group New York, Inc. ("The Change Group" or "Defendant") (collectively, the "Parties" and each a "Party").

WHEREAS, Named Plaintiffs, on behalf of themselves and the Class, have made claims against the Defendant for allegedly unpaid compensation in the United States District Court for the Southern District of New York (the "Court"), styled *Kwame Asare and Haydee Campos, et al. v. The Change Group New York, Inc.* (hereinafter the "Litigation"). Such putative collective action/class action complaint (the "Complaint") included allegations under the Fair Labor Standards Act (the "FLSA") and New York law; and

WHEREAS, the Parties agree that there are bona fide disputes between them with respect to the legal entitlement to the amounts claimed in the Litigation and the facts that are the basis for the allegations in the Litigation; and

WHEREAS, the Parties engaged in a series of arms-length negotiations that culminated in an agreement on the terms of this Agreement; and

WHEREAS, further litigation will require extensive preparation and expense unless the disputes between and among the Parties are fully settled, terminated, and dismissed with prejudice at this time; and

WHEREAS, this Agreement is intended to, and does, effectuate the full, final, and complete resolution of all allegations and wage and hour claims under New York State Law and/or the Fair Labor Standards Act ("FLSA") that were asserted, or could have been asserted, in

the Litigation, including any appeals, by Named Plaintiffs or the Class Members (as defined below) that Named Plaintiffs seek to represent; and

WHEREAS, Class Counsel (as hereinafter defined) analyzed and evaluated the merits of the claims made against Defendant and the impact of this Agreement on Named Plaintiffs and the Class and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs and the Class.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.   **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1   **Administrator.** The "Administrator" shall mean the administrator selected by the Parties to mail the Notices and administer the settlement.

1.2   **Bar Date.** "Bar Date" shall mean the date by which any Class Member who wishes to qualify as a "Claimant" must file a Claim Form, which date shall be sixty (60) days after the initial mailing of Notice by the Administrator.

1.3   **Claimant.** "Claimant" shall mean any employee of The Change Group who is eligible to participate in this settlement so long as he or she shall: (i) file with the Administrator a duly executed Claim Form by the Bar Date, and (ii) whose Claim Form is not rejected. **By executing the Claim Form, Claimants acknowledge that they agree to settle all wage and hour claims of any kind that they may have against Defendant, including, but not limited to, New York State Wage & Hour Claims and the FLSA claims, except for workers' compensation claims.**

1.4   **Claim Form.** "Claim Form" shall mean the form, a copy of which is attached to the Notice (as defined below), that the Class Members must sign and return post-marked by the Bar Date. The Claim Form must be sent to the Administrator as set forth in the Notice for a Class Member to receive a distribution from the Settlement Account.

1.5   **Class.** "Class" shall mean all current and former employees of Defendant who held the title "Foreign Exchange Sales Consultant" (including, for the avoidance of doubt, Foreign Exchange Sales Consultant Trainees and Senior Foreign Exchange Sales Consultants) and/or "Team Leader" at any time from April 28, 2006 to April 27, 2012. A member of the Class is a "Class Member."

1.6 **Class Counsel.** "Class Counsel" shall mean Douglas A. Wigdor, Shaffin A. Datoo and David E. Gottlieb of Thompson Wigdor LLP. For purposes of providing any notices required under this Agreement, Class Counsel shall refer to David E. Gottlieb, 85 Fifth Avenue, New York, New York 10003.

1.7 **Days.** "Days" shall mean business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

1.8 **Defendant Group.** "Defendant Group" shall mean the Defendant and/or any other entities affiliated with or controlled by Defendant, including its present and former owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, insurers, attorneys, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and all persons acting by, through, under or in concert with any of them.

1.9 **Fairness Hearing.** "Fairness Hearing" shall mean the hearing before the Court relating to the Motion for Final Approval.

1.10 **Final Effective Date.** "Final Effective Date" shall mean the first date after the Court has entered a Final Order approving this settlement and the Court has entered the judgment; the time to appeal from the Final Order has expired and no notice of appeal has been filed or if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

1.11 **Final Order.** "Final Order" shall mean the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the settlement payments from the Settlement Account, approval of professional fees and costs, and dismissal of this action.

1.12 **Implementing Order.** "Implementing Order" shall mean the Order entered by the Court: (i) effectuating the proposed settlement; (ii) approving the Notice and Claim forms and, (iii) directing the manner and timing of publishing the Notice to the Class.

1.13 **Named Plaintiffs.** "Named Plaintiffs" shall mean Kwame Asare and Haydee Campos. Named Plaintiffs must file a Claim Form to participate in this settlement.

1.14 **Notice or Notices.** "Notice" or "Notices" shall mean the Court–approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed Settlement.

1.15 **Objector.** "Objector" shall mean an individual who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.16   **Opt-out Statement.** "Opt-out Statement" shall mean a written signed statement that an employee of The Change Group has decided to opt-out and not be included in this Agreement.   An employee who does not submit an Opt-out Statement waives and releases all wage and hour claims under New York State Law, even though he or she does not submit a Claim Form. An employee who submits an Opt-out Statement retains any FLSA and/or New York State Law Claims.

1.17   **Relevant Period.** "Relevant Period" shall mean the period from April 28, 2006 to April 27, 2012.

1.18   **Settlement Account.** "Settlement Account" shall mean an account established by the Defendant, pursuant to this Agreement. The Settlement Account shall contain the aggregate of all Claims, professional fees and costs as authorized by the Court in the Final Order.

1.19   **Settlement Checks.** "Settlement Checks" shall mean checks issued to Claimants from the Settlement Account calculated in accordance with this Agreement.

1.20   **Settlement Fund.** "Settlement Fund" shall mean the maximum aggregate to be paid by Defendant, including professional fees, costs and expenses.

1.21   **New York State Wage & Hour Claims.** "New York State Law" and "New York State Wage & Hour Claims" shall mean all wage and hour claims that could have been asserted under New York State law by or on behalf of any of the Class Members, excluding Class Members who opt-out of the settlement, under New York State Law.   Released New York State Wage & Hour Claims include all compensation, wage, overtime or benefits claims under state law (including, without limitation, the New York Labor Law and New York Codes, Rules and Regulations), including claims for unpaid regular or overtime wages, any related wage and hour claims, all 'derivative benefit claims' (*defined as* claims for benefits resulting from alleged failure to pay overtime or wages, including both ERISA and non-ERISA benefits), interest on such claims, liquidated damages, and attorneys' fees, expenses and costs related to such claims.   However, Class Members do not release workers' compensation claims.

2.   **INITIAL PROCEDURAL ISSUES**

2.1   **Binding Agreement.** This Agreement is a binding agreement and contains all material, agreed-upon terms.

2.2   **State Law Settlement.** For purposes of settlement only, the Parties stipulate to include all Class Members possessing New York State Law claims during the Relevant Period.

2.3   **Retention of the Administrator.** Within a reasonable period of time after the Implementing Order, the Defendant shall engage an Administrator who is mutually agreeable to the Parties.

2.4   **Responsibilities of the Administrator**. The Administrator shall be responsible for: (i) preparing, printing and disseminating the Notice and Claim Forms to the Class Members; (ii) copying counsel for all Parties on material correspondence and promptly notifying all

counsel for the Parties of any material requests or communications made by any Party; (iii) offering and monitoring a phone number that Class Members can call with questions about the settlement; (iv) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from the Class Members which the Administrator receives; (v) receiving and reviewing the Claim Forms submitted by the Class Members; (vi) keeping track of requests for exclusion, including maintaining the original mailing envelope in which the request was mailed; (vii) mailing the Settlement Checks to Claimants; (viii) preparing and mailing counsel's attorneys' fees, expenses, and costs in accordance with this Settlement Agreement and Order of the Court; (ix) taking reasonable steps to obtain the correct address of any Class Member for whom a Notice and Claims Form is returned by the post office as undeliverable, and attempting a re-mailing to any Class Member for whom it obtains a more recent address; (x) responding to inquiries of the Class Members regarding procedures for filing objections, opt-out forms, and Claim Forms; (xii) referring to Class Counsel all inquiries by the Class Members regarding matters not within the Administrator's duties specified herein; (xii) responding to inquiries from Counsel for the Parties consistent with the Administrator's duties specified herein; (xiii) maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and mailing and receipt of Claim Forms(s), returned mail and other communications and attempted written or electronic communications with the Class Members; (xiv) confirming in writing to Class Counsel and Defendant's Counsel its completion of the administration of the settlement; (xv) timely responding to communications from the Parties or their counsel; and (xvi) such other tasks as the Parties mutually agree.  In addition, no later than ten (10) days prior to the Fairness Hearing, the Administrator shall provide to Class Counsel and Defendant's Counsel (a) a list of all Class Members who timely filed their Claim Form (b) a list of all Class Members who filed a timely objection, and (c) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period.   Throughout the period of claims administration, the Administrator will provide reports to the Parties, upon request by either Party, regarding the status of the mailing of the Notices and Claim Forms to the Class Members, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

**2.5**    **Responsibilities of Defendant.**  The Change Group shall be responsible for issuing Settlement Checks to Claimants and paying all payroll tax obligations of The Change Group, including issuing the W-2 Forms for all amounts paid to the Claimants. Claimants shall be responsible for any other tax-related matters other than as expressly required of Defendant.

**2.6**    **Notice.**  The Notice will inform Class Members about this Settlement and will also advise them of the opportunity to object to, opt-out, or file a Claim Form to participate in the settlement, and/or to appear at the Fairness Hearing.  Within thirty (30) days of the entry of the Implementing Order by the Court, the Administrator will mail to all Class Members, via First Class United States Mail, the Court–approved Notices of Proposed Settlement and Fairness Hearing, with Claims Form. The Administrator will take reasonable steps to obtain the correct address of any Class Member for whom a Notice and Claims Form is returned by the post office as undeliverable, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The

Administrator will notify Class Counsel and Defendant's Counsel of any Notice and Claims Form sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice and Claims Form returned as undeliverable after any subsequent mailing(s), as set forth in this Agreement. Twenty (20) days after the first mailing, the Administrator will effectuate a second mailing of the Notice to all Class Members.

2.7 **Access to the Administrator.** The Parties will have equal access to the Administrator throughout the claims administration period. Class Counsel and Defendant's Counsel agree to provide the Administrator with all accurate information necessary to calculate the Settlement Checks, and reasonably to assist the Administrator in locating the Class Members.

2.8 **Approval of the Implementing Order.**

(A) Within fifteen (15) days of all Parties, or their authorized representatives, signing this Agreement, Class Counsel shall apply to the Court for preliminary approval of the settlement and to publish the proposed Notice and Claim Form.

(B) The proposed Implementing Order will seek the setting of a date for (i) individuals to submit Claim Forms, opt-out of this Agreement and/or provide objections to this Agreement, which date will be sixty (60) days from the initial mailing of Notice and Claims Forms to the Class Members, and (ii) for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(C) Class Counsel will inform the Court of the intended process to obtain a "Final Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) approve the proposed Notice to the Class Members and incorporate the terms of the Release, as described herein; (3) dismiss the Litigation; and (4) award Class Counsel fees, expenses and costs, as specified herein.

(D) The Parties will work together, diligently and in good faith, to expeditiously obtain an Implementing Order, Final Order, and Final Judgment and Dismissal with prejudice.

2.9 **Notice and Claims Forms to Class Members**

(A) Within five (5) days of the Court's entering the Implementing Order, Defendant's Counsel will provide Class Counsel and the Administrator, in electronic form and for all known Class Members, a mailing list containing the following information: name, job title, and last known address, as that information exists on file with Defendant. All information provided regarding the Class Members will be treated as confidential information by Class Counsel and the Administrator. Said information will not be used by Class Counsel and the Administrator for any purpose other than to effectuate the terms of settlement.

(B)     Class Members will have sixty (60) days from the date of the Notice to return the Claim Form.   To be effective, a Claim Form must be post-marked by the Court-authorized Bar Date.   To the extent that the envelope does not contain a post-mark, the date that the Administrator stamps the envelope or Claim Form "received" shall apply.

**2.10    Opt-outs.**

(A)     Class Members who choose to opt-out of the settlement, as set forth in this Agreement, must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, telephone number, and a statement indicating his or her intention to opt-out such as: "I opt out of The Change Group wage and hour settlement." ("Opt-out Statement").   To be effective, an Opt-out Statement must be post-marked by the Bar Date.

(B)     The end of the time period to opt-out of the settlement ("Opt-out Period") shall be the Bar Date.

(C)     The Administrator will send a final list of all Opt-out Statements to Class Counsel and Defendant's Counsel before the Fairness Hearing.   The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Judgment in this case, and have any State Law Claims released and dismissed.   Only those Class Members who timely complete and return a Claim Form post-marked by the Bar Date will be deemed authorized to participate in this settlement as a "Claimant."   Upon payment, Claimants will have all claims dismissed, with prejudice.   The Defendant will fund amounts allocated to each Claimant who returns a timely Claim Form as set forth in this Agreement.   The Defendant shall have no obligation to pay or fund any amounts allocated to the Class Members who do not submit a timely Claim Form as set forth in this Agreement.

**2.11    Objections to Settlement.**

(A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.   To be considered, such statement must be mailed to the Administrator via First-Class United States Mail, postage prepaid, and post-marked by the Bar Date.   The statement must include all reasons for the objection.   The statement must also include the name, job title, address, and telephone number for the Class Member making the objection.   The Administrator will stamp the date received on the original and send copies of each objection, supporting documents, to Class Counsel and Defendant's Counsel by

email delivery no later than three (3) days after receipt of the objection.   The Administrator will file all objection statements with the Court.

(B)   An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing . An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time.

**2.12   Fairness Hearing and Motion for Final Approval and Dismissal.**

At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the settlement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute Settlement Checks to the Class Members who filed valid, timely Claims Forms, (3) order the attorneys' fees, expenses and costs to be paid to Class Counsel, in accordance with this Agreement; (4) (a) order the dismissal with prejudice of all State Law Claims by all Class Members who did not opt-out; (b) order the dismissal with prejudice of FLSA and State Law claims by all the Class Members who opted in; (5) order entry of Final Judgment; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.13   Mailing of Settlement Checks.**

The Settlement Checks and Class Counsel's check to pay for all approved professional fees and expenses, will be mailed to Claimants and to Class Counsel by the Administrator 10 days after the Final Effective Date or by January 15, 2012, whichever is later.

Claimants will have ninety (90) calendar days after their check date to redeem their Settlement Checks.  If Claimants do not redeem their Settlement Checks within the 90 day period, their Settlement Checks will be void and the funds previously earmarked for such Claimants (the "Returned Funds") shall be treated as set forth below.

Returned Funds that were previously earmarked for Claimants pursuant to Paragraph 3.4(A) shall be redistributed *pro rata* among all other Claimants.   Any additional Returned Funds shall revert back to Defendant.

**2.14   Termination of Agreement**

(A)   **Grounds for Settlement Termination.**

1.   The Defendant has the right to terminate this Agreement, at its sole option, if the aggregate figure representing the payments to be made to all Claimants, plus payment to Class Counsel for professional fees and costs, exceeds One Hundred Sixty Five Thousand Seven Hundred Sixty Five Dollars and One Cent ($165,765.01).

2.   Class Counsel has the right to terminate this Agreement, at their sole option, if the Court does not approve (i) the payment to Class Counsel for professional fees and costs of Forty Thousand Three Hundred Forty Seven Dollars and Seventy Cents ($40,347.70) and/or (ii) the Court does not approve the service payments of Eight Thousand Dollars to each of the Named Plaintiffs.

3.   Defendant's Counsel has the right to terminate this Agreement, at their sole option, if the Court approves the payment to Class Counsel of professional fees and costs in excess of Forty Thousand Three Hundred Forty Seven Dollars and Seventy Cents ($40,347.70).

4.   Either Party may terminate the Agreement if the Court declines to enter the Implementing Order or Final Order.

5.   Notwithstanding any other provision of this Agreement, Defendant retains the right, in the exercise of its sole discretion, to terminate the Agreement if either: (a) more than five percent (5%) of the Class, excluding Named Plaintiffs, opt out of this settlement pursuant to Section 2.10 of this Agreement; or (b) any Named Plaintiff opts out of this settlement pursuant to Section 2.10 of this Agreement.

(B)   **Procedures for Termination**.  To terminate this Agreement, the terminating Party shall give written notice to the other Party no later than fifteen (15) business days after the Parties are notified that the value of the Claims exceeds the amount specified in Paragraph 2.14(A)(1), is less than the amount specific in Paragraph 2.14(A)(2) or that more than five percent (5%) of the Class or a Named Plaintiff has opted-out as set forth in Paragraph 2.14(A)(4).

(C)   **Effect of Termination**. Termination shall have the following effects:

1.   The Agreement shall be terminated as to the affected Parties and shall have no force or effect, and no Party shall be bound by any of its terms with respect to the terminating Parties;

2.   In the event the settlement is terminated, the Defendant shall have no obligation to make any payments to any party, Claimant or attorney;

3.   The Administrator will provide a Court-approved notice to the Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to the Class Members under the Agreement.  Such notice shall be mailed by the Administrator via First Class United States Mail;  and

4.   The Class Members shall have the right to proceed with the Litigation, and Defendant retains the right to defend the Litigation, and to contest the merits of the claims being asserted in the Litigation and whether this Litigation should be maintained as a class action or collective action. In

such a case, the Parties shall negotiate and submit for Court approval a revised Case Management Schedule.

**3.     SETTLEMENT TERMS**

**3.1     Settlement Fund Computation and Allocations.**

(A)     Defendant agrees to establish a Settlement Fund of One Hundred Sixty Five Thousand Seven Hundred Sixty Five Dollars and One Cent ($165,765.01), which shall fully resolve and satisfy any and all amounts to be paid to the Class Members, any Court-approved service payments to the Named Plaintiffs, and any claim for attorneys' fees or costs approved by the Court. Other than the employer payroll taxes ordinarily borne by employers and the Administrator's fees, Defendant will not be required to pay more than the Settlement Fund of $165,765.01 in connection with this Agreement or the settlement.

(B)     Defendant shall deposit the Settlement Fund into the Settlement Account within five (5) days of the Final Order.

(C)     Within fifteen (15) days of the Final Effective Date, the Administrator will distribute the Settlement Fund by making the following payments:

(1)     Paying Class Counsel its Court-approved fees, costs and expenses as described in Paragraph 3.2;

(2)     Paying Court-approved service payments to the Named Plaintiffs as described in Paragraph 3.3; and

(3)     Paying the Class Members their individual settlement payments as described in Paragraph 3.4.

**3.2     Payments From the Settlement Fund for Professional Fees and Costs.**

At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees in the amount of Forty Thousand Three Hundred Forty Seven Dollars and Seventy Cents ($40,347.70), which includes reimbursement of their actual litigation expenses and costs. Defendant will not oppose this application, including any appeal or request for reconsideration if the application is denied by the Court. Defendant acknowledges that this request for attorney fees and costs is fair and reasonable. Defendant shall take no position on Class Counsel's petition for fees and costs within the context of this Agreement and related proceedings only, except to the extent Class Counsel's position is in any way inconsistent with the terms of this Agreement.

**3.3     Service Payments to the Named Plaintiffs**

At the Fairness Hearing, the Named Plaintiffs Kwame Asare and Haydee Campos will apply to the Court to receive settlement payments from the Settlement Fund for services rendered to the Class. They will apply to the Court for no more than Eight Thousand

Dollars ($8,000.00) each.  Defendant will not oppose such applications, except to the extent Class Counsel's position is in any way inconsistent with the terms of this Agreement.  These service payments, and the requirements for obtaining such payments, are separate and apart from, and in addition to, other recovery to which the Named Plaintiffs might be entitled, and other requirements for obtaining such recovery, under other provisions of this Agreement.

**3.4**   **Distribution of the Settlement Fund to Class Members**

(A)   All Claimants who submit a Claim Form by the Bar Date, in accordance with the terms and conditions of the Notice, shall be entitled to an equal share of $4,292.09.   This amount addresses claims for all Claimants for: (a) Defendant's alleged failure to include bonus payments in the regular rate of pay when calculating Class Members' overtime rate; and (b) Defendant's alleged deductions from Class Members' pay when Class Members arrived more than four (4) minutes late but less than 15 minutes late for a shift.  Class Counsel analyzed Defendant's personnel and pay records (as provided by Defendant), and acknowledges and agrees that $1,529.42 is an acceptable and appropriate recovery for the Class for alleged failure to include bonus payments in the regular rate of pay when calculating Class Members' overtime rate during the Relevant Period, and that $2,762.67 is an acceptable and appropriate recovery for the Class for amounts allegedly owed for deducting from Class Members' pay when Class Members arrived more than four (4) minutes late but less than 15 minutes late for a shift during the Relevant Period.

(B)   In addition, all Claimants who submit a Claim Form by the Bar Date, in accordance with the terms and conditions of the Notice, shall be entitled to a portion of $42,440.22, in amounts as set forth in **Exhibit A** attached hereto. These amounts address claims for alleged impermissible deductions from bonus payments to Class Members.  Exhibit A reflects, pursuant to the information available to the Company, 70% of the alleged impermissible deductions from bonus payments to each Class Member during the Relevant Period.  In the event that the amount paid out pursuant to this Paragraph 3.4(B) totals (in the aggregate) less than $42,440.22, any amounts remaining shall revert back to Defendant.

(C)   In addition, all Claimants who submit a Claim Form by the Bar Date, in accordance with the terms and conditions of the Notice, shall be entitled to a portion of $62,685.00, in amounts as set forth in **Exhibit B** attached hereto. These amounts address claims for alleged failure to pay wages when Class Members worked through lunch or stayed to work after their shifts had ended. Exhibit B reflects, pursuant to the information available to the Company, three quarters (0.75) of an hour's pay, at an agreed-upon approximate average wage rate of $14.00 per hour, for every week in which each Class Member worked more than 1 day (*i.e.*, $10.50 per each such week) during the Relevant Period.  In the event that the amount paid out pursuant to this Paragraph 3.4(C) totals (in the aggregate) less than $62,685.00, any amounts remaining shall revert back to Defendant.

**3.5    Tax Characterization.**

(A)    All settlement payments to the Class Members will be deemed W-2 wage income and shall be subject to all applicable taxes and withholdings.

(B)    All applicable employer Payroll Tax contributions associated with wage payments, including, but not limited to, the employer share of FICA, FUTA, and SUTA will be paid by Defendant.

**3.5    Confidentiality**

(A) Claimants, Class Counsel, Defendant, and Defendant's Counsel agree that they will not issue or cause to be issued any press release or communication to any third party (excluding putative Class Members) and will not otherwise communicate to any media or media representative, including but not limited to the electronic, print, or digital media or social networking site, information regarding the Litigation, the claims asserted therein, the settlement of the Litigation and/or this Agreement, or the facts and events leading up to same, or the amount of money paid to resolve the Litigation. If contacted by the press or other forms of media, including but not limited to any blogs or other social media websites, the Parties and their counsel will state that the matter has been resolved to the satisfaction of all Parties. Notwithstanding the terms of this paragraph, the Parties shall be free to make whatever disclosures they deem necessary and appropriate to their attorneys and financial and tax advisors, provided those disclosures are truthful.

(B)    Claimants and Class Counsel acknowledge and agree that this confidentiality provision is an express and absolute condition of this Agreement, is bargained-for consideration for this Agreement, and is not a mere recital, and that any violation of the terms and conditions of this confidentiality provision shall constitute a material breach of this Agreement. Claimants and Class Counsel acknowledge that a breach of the confidentiality provisions contained in this Agreement may cause great damage and injury to Defendant, that such damage or injury may be difficult or impossible to quantify, and that such provisions provide a material element of Defendant's consideration for and inducement to enter into this Agreement. Defendant may seek monetary damages for a breach of this provision and may also be entitled to obtain an injunction against Claimant(s) or Class Counsel from any court having jurisdiction over this matter, restraining the Claimant(s) or Class Counsel from any further violation of this confidentiality provision. The breach of this Section 3.5 or the granting of other relief by a court shall not affect the continuing validity or enforceability of Claimants' and the Class's release of claims herein.

**4.    RELEASE**

**4.1    Release of Claims.**

(A)    By operation of the entry of the Judgment and Final Order, and except as to such rights or claims as may be created by this Agreement, (a) each Class Member who fails to submit an Opt-out Statement forever and fully releases the Defendant Group from all New York State Wage & Hour Claims, (b) each Claimant fully

releases the Defendant Group from all claims as set forth in the Claim Form including, but not limited to, New York State Wage & Hour Claims and FLSA claims, and (c) the Named Plaintiffs forever and fully release the Defendant Group from all claims by reason of any matter, cause or thing whatsoever, including but not limited to New York State Wage & Hour claims, FLSA claims, and claims arising out of or attributable to their employment with the Defendant.

(B)     Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Class Counsel, the Named Plaintiffs and the Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against the Defendant for attorneys' fees or costs associated with Class Counsel's, or any other attorneys', representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

## 5.     INTERPRETATION AND ENFORCEMENT

**5.1     Cooperation Between the Parties; Further Acts**.   The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2     No Assignment.**  Class Counsel and the Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3     Non-Admission of Liability.**  By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Named Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Named Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

5.4    **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.5    **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.6    **Arms-Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms-length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.7    **Captions.** The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.8    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

5.9    **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect, unless otherwise explicitly set forth herein.

5.10   **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.11   **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

5.12   **Waivers, etc. to Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure,

shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.13    **When Agreement Becomes Effective; Counterparts**.  This Agreement shall become effective upon its full execution and final approval by the Court, subject to the terms and conditions set forth herein.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.14    **Binding Authority of Class Counsel**. Class Counsel hereby represents that they are fully authorized to bind the Named Plaintiffs to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

5.15    **Signatures.**  This Agreement is valid and binding if signed by the Parties' authorized representatives.

5.16    **Facsimile and Email Signatures.**  Any Party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

Dated: New York, New York
       November 27 , 2012

THOMPSON WIGDOR LLP

By:     Douglas H. Wigdor
         David E. Gottlieb

85 Fifth Avenue
New York, New York 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
dwigdor@thompsonwigdor.com
dgottlieb@thompsonwigdor.com

*Attorneys for Plaintiffs*

NAMED PLAINTIFFS:

Kwame Asare     11/26/2012
Kwame Asare         Date

THE CHANGE GROUP NEW YORK, INC.

Print Name:  Gregg Brochin

Title: Outside Counsel authorized to sign for The Change Group, Inc.

Haydee Campos     11/26/2012
Haydee Campos         Date

# Exhibit A

**Exhibit A**

| Name | 70% of Deductions |
|------|------------------:|
| Alderman, Lashonda | $1,542.23 |
| Anglade, Roger | $39.42 |
| Aquino, Edgar | $646.53 |
| Arellano, Carlos | $171.16 |
| Arrington, Ragena | $1,201.55 |
| Arutyunyants, Roman | $212.91 |
| Asare, Kwame | $113.69 |
| Awashish, Julian | $1,757.43 |
| Ballou, Pamela | $977.94 |
| Barreiro, Gilda | $37.22 |
| Berghachi, Fatima | $831.05 |
| Bonilla, Kaydee | $470.28 |
| Brito, Jason | $95.82 |
| Britt, Tara | $382.69 |
| Brown, David | $423.00 |
| Campos, Haydee | $334.64 |
| Carl, Christa | $369.80 |
| Cherenfant, Katz | $88.91 |
| Colon, Divya | $373.99 |
| Commey, Eleanor | $252.08 |
| Commey, Michaelina | $620.19 |
| Commey, Raphael | $1,513.44 |
| Crnkic, Renaldo | $424.20 |
| Cuervas, Emily | $344.29 |
| Da Luz, Josseline | $543.00 |
| Daniel, Candace | $298.35 |
| Daniels, John | $13.03 |
| Davis, Jessica | $687.28 |
| De Caro, Christina | $600.98 |
| Dileo, Jeannette | $390.24 |
| Dzitse, Barbara | $1,180.10 |
| El-Rowheim, Elham | $1.46 |
| Esquillin, Samantha | $459.87 |
| Estiverne, Melissa | $27.07 |
| Finney, Courtney | $654.82 |
| Friend, Lauren | $1,081.99 |
| Gonzales, Maria | $159.71 |
| Hazeley, Ayana | $264.59 |
| Hernandez, Maria | $752.02 |
| Hirad, Abbas A. | $51.24 |
| Hsiang, Jacqueline | $17.84 |
| Isaacson, Michael | $4.59 |
| Joseph, Barbara | $954.02 |

| | |
|---|---|
| Joseph, Diana | $687.94 |
| Juste, Martine | $1,339.39 |
| Klonsky, Alex | $67.92 |
| Lancaster, Paulina | $1,197.65 |
| Langlotz, Bryan | $128.91 |
| Lewis, Daliah | $128.16 |
| Magtoto, Katlene | $177.84 |
| Marris, Jessica | $669.12 |
| McLean, Samantha | $361.32 |
| Melendez, Christina | $793.63 |
| Muhammad, Qituwra | $825.31 |
| Murph, Tomi | $955.84 |
| Nichols, Benjamin | $300.83 |
| Niumeitolu, Amelia | $203.54 |
| Nova, Isabel | $386.48 |
| O'Neil, Christopher | $1,387.97 |
| Onyekaba, Winkle | $80.04 |
| Philippe, Harry | $201.50 |
| Polycarpe, Vanessa | $2,856.18 |
| Ramikissoon, Vidur | $590.03 |
| Ramos, Aida | $412.01 |
| Razakova, Yayra | $437.91 |
| Rodriguez, Marites | $892.29 |
| Rollins, Shirley | $676.32 |
| Ruiz, Alana | $0.00 |
| Sanchez, Jorge | $349.28 |
| Scott, Laverne | $1,766.89 |
| Segbefia, Francis | $513.32 |
| Shaikh, Saad | $92.49 |
| Shaikh, Wardha | $138.64 |
| Simpson, Brandy | $3.96 |
| Singleton, Kevin | $429.80 |
| Staccatto, David | $8.33 |
| Stevenson, Keysha | $408.02 |
| Reyes, Tara | $93.04 |
| Tavarez, Ivana | $418.26 |
| Tsang, Tiffany | $21.97 |
| Villegas, Miguel | $97.57 |
| Waluszko, Robert | $120.20 |
| Washington, Jalisa | $4.05 |
| West, Tesslar | $18.07 |
| Zukin, Ruslan | $831.55 |
| | $42,440.22 |

# Exhibit B

**Exhibit B**

| Name | Applicable Weeks | Payment Amount |
|------|------|------|
| Acebo, Leonardo | 2 | $21.00 |
| Alderman, Lashonda | 55 | $577.50 |
| Algammaz, Lisa | 2 | $21.00 |
| Anglade, Roger | 25 | $262.50 |
| Aquino, Edgar | 53 | $556.50 |
| Arellano, Carlos | 82 | $861.00 |
| Arrington, Ragena | 97 | $1,018.50 |
| Arutyunyants, Roman | 21 | $220.50 |
| Asare, Kwame | 129 | $1,354.50 |
| Awashish, Julian | 149 | $1,564.50 |
| Ballou, Pam | 181 | $1,900.50 |
| Barreiro, Gilda | 17 | $178.50 |
| Berghachi, Fatima | 66 | $693.00 |
| Bonilla, Kaydee | 48 | $504.00 |
| Bowman, Lesa | 2 | $21.00 |
| Brito, Jason | 15 | $157.50 |
| Britt, Tara | 72 | $756.00 |
| Brown, David | 24 | $252.00 |
| Campos, Haydee | 39 | $409.50 |
| Carl, Christa | 231 | $2,425.50 |
| Charite, Cynthia | 1 | $10.50 |
| Cherenfant, Katz | 63 | $661.50 |
| Colon, Divya | 41 | $430.50 |
| Commey, Eleanor | 18 | $189.00 |
| Commey, Michaelina | 165 | $1,732.50 |
| Commey, Raphael | 90 | $945.00 |
| Crnkic, Renaldo | 57 | $598.50 |
| Cruz, Jessica | 5 | $52.50 |
| Cuervas, Emily | 95 | $997.50 |
| Da Luz, Josseline | 110 | $1,155.00 |
| Daniel, Candace | 6 | $63.00 |
| Daniels, John | 49 | $514.50 |
| Dantzler, Jewel | 1 | $10.50 |
| Davis, Jessica | 91 | $955.50 |
| De Caro, Christina | 161 | $1,690.50 |
| Dennis, Doniel | 2 | $21.00 |
| Dileo, Jeannette | 19 | $199.50 |
| Dzitse, Barbara | 110 | $1,155.00 |
| El-Rowheim, Elham | 47 | $493.50 |
| Esquilin, Samantha | 68 | $714.00 |
| Estiverne, Melissa | 46 | $483.00 |
| Eugene, Joycelyn | 3 | $31.50 |

| | | |
|---|---:|---:|
| Feng, Susan | 4 | $42.00 |
| Finney, Courtney | 85 | $892.50 |
| Friend, Lauren | 151 | $1,585.50 |
| Gonzales, Maria | 5 | $52.50 |
| Hazeley, Ayana | 30 | $315.00 |
| Hernandez, Maria | 130 | $1,365.00 |
| Hirad, Abbas A | 2 | $21.00 |
| Holland, Adam | 1 | $10.50 |
| Isaacson, Michael | 7 | $73.50 |
| Jackie | 12 | $126.00 |
| Joseph, Barbara | 105 | $1,102.50 |
| Joseph, Diana | 195 | $2,047.50 |
| Juste, Martine | 247 | $2,593.50 |
| Klonsky, Alex | 21 | $220.50 |
| Lancaster, Paulina | 41 | $430.50 |
| Langlotz, Bryan | 68 | $714.00 |
| Lewis, Daliah | 20 | $210.00 |
| Magtoto, Katlene | 147 | $1,543.50 |
| Maris, Jessica | 119 | $1,249.50 |
| McLean, Samantha | 12 | $126.00 |
| Melendez, Christina | 146 | $1,533.00 |
| Muhammad, Qituwra | 31 | $325.50 |
| Murph, Tomi | 75 | $787.50 |
| Nichols, Ben | 33 | $346.50 |
| Niumeitolu, Amelia | 40 | $420.00 |
| Nova, Isabel | 14 | $147.00 |
| Ock, Sujin | 2 | $21.00 |
| O'Neil, Chris | 82 | $861.00 |
| Onyekaba, Chris | 26 | $273.00 |
| Philippe, Harry | 44 | $462.00 |
| Polycarpe, Vanessa | 169 | $1,774.50 |
| Pullum, India | 3 | $31.50 |
| Ramikissoon, Vidur | 33 | $346.50 |
| Ramos, Aida | 85 | $892.50 |
| Razakova, Yayra | 159 | $1,669.50 |
| Reyes, Tara | 14 | $147.00 |
| Rodriguez, Marites | 46 | $483.00 |
| Rollins, Shirley | 40 | $420.00 |
| Roman | 11 | $115.50 |
| Romero, Elisa | 3 | $31.50 |
| Ruiz, Alana | 52 | $546.00 |
| Ruiz-Diaz, Anthony | 2 | $21.00 |
| Sanchez, Jorge | 19 | $199.50 |
| Santiago, Shaolin | 1 | $10.50 |
| Scott, Laverne | 167 | $1,753.50 |
| Scott, Vanessa | 35 | $367.50 |
| Segbefia, Francis | 227 | $2,383.50 |

| | | |
|---|---|---|
| Shaikh, Muhammad | 11 | $115.50 |
| Shaikh, Wardha | 123 | $1,291.50 |
| Simpson, Brandy | 17 | $178.50 |
| Singleton, Kevin | 12 | $126.00 |
| St. Vauldray, Albert | 7 | $73.50 |
| Staccato, David | 30 | $315.00 |
| Stephen, Heather | 2 | $21.00 |
| Stevenson, Keysha | 55 | $577.50 |
| Stokes, Jem | 2 | $21.00 |
| Tarore, Jareena | 2 | $21.00 |
| Tavarez, Ivana | 7 | $73.50 |
| Tsang, Tiffany | 26 | $273.00 |
| Villegas, Miguel | 39 | $409.50 |
| Waluszko, Robert | 44 | $462.00 |
| Washington, Jalisa | 6 | $63.00 |
| West, Tessia | 5 | $52.50 |
| Zukin, Ruslan | 63 | $661.50 |